Olaf TROVATTEN

v.

UNITED STATES of America.

Civ. A. No. 43344.

United States District Court,
E. D. Pennsylvania.

April 6, 1972.

John A. McMenamin, Philadelphia, Pa., for plaintiff.

Bert Zibelman, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TROUTMAN, District Judge.

### I.

### JURISDICTION

This action involving alleged injury to a crewman of a public vessel of the

United States of America is brought under the Admiralty Law as modified by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 and the Public Vessels Act, 46 U.S.C. §§ 781–790 and pursuant to the Jones Act, 46 U.S.C. § 688 and the general maritime law.

## II.

### FINDINGS OF FACT

1. Plaintiff, Olaf B. Trovatten, was born in Risor, Norway, and became a naturalized United States citizen.

2. Plaintiff first came to the United States in 1935 and sailed in the United States Merchant Marine fleet through World War II and until 1947, when he returned to Norway for a period of ten years. Since his return from Norway, he has remained in the United States.

3. Plaintiff has been sailing as a seaman since he was sixteen years old and at the time of trial had thirty-five years of experience.

4. In addition to practically all of the deck ratings for which he has been certified by the United States Coast Guard, he sailed as a Third Mate during World War II.

5. At the time of plaintiff's injury, January 3, 1967, aboard defendant's vessel, plaintiff was sailing as deck maintenance man. The vessel was at that time in Cam Ranh Bay, Vietnam.

6. Plaintiff joined the SS Denison Victory in July of 1966 and had previously completed a voyage to the Far East and was on his second voyage on defendant's vessel at the time of his injury.

7. The SS Denison Victory was a public vessel owned by the United States of America and at the time of plaintiff's injury being operated by the Marine Transport Lines under a husbanding arrangement.

8. On January 3, 1967, between 8:00 and 9:00 A.M., plaintiff was engaged in duty required of him in the raking in of the port gangway.

9. The gangway was an old one, being of the hinged variety with a platform and was made of wood and steel, approximately 35 feet long and weighing approximately one thousand pounds.

10. Equipment being used to rake the gangway in, was a frapping line and two handy billies.

11. In the process, and before the job was completed, plaintiff's hand was caught between the side of the gangway and the ship's gunnels when the gangway was suddenly heaved in.

12. As a result of being caught between the side of the gangway and the ship's gunnels, plaintiff's left ring finger was badly cut.

13. The method utilized by the ship's officers for raking in of the port gangway, was inherently dangerous and was elected despite the existence of other methods, which were both better suited for the task at hand and safer to perform, viz, the use of the ship's winches and gear and avoidance of both manual labor and exposure.

14. Considering the method used for the raking in of the port gangway, the ship's officers failed to furnish sufficient manpower to do so.

15. Considering the method used for the raking in of the port gangway, the ship's officers failed to provide adequate supervision.

16. The ship's officers failed to provide the proper equipment for the raking in of the port gangway.

17. As a result of the method used to rake in the port gangway, the lack of adequate equipment and adequate manpower, the gangway was suddenly surged against the side of the ship, causing plaintiff's injury.

18. The only emergency treatment rendered to plaintiff by the ship's officers aboard ship consisted of the application of two bandaids to the injured finger at that time.

19. Plaintiff went to a dispensary on January 4, 1967 at Cam Ranh Bay, where an orderly affiliated with the

United States Army cleaned the injured finger and changed the bandage.

20. Plaintiff was told by the orderly not to move his hand too much and keep his hand straight.

21. Plaintiff indicated to the Chief Mate that he had been told by the orderly to keep his hand straight, however, the officer required plaintiff to work.

22. Plaintiff returned to the Army Dispensary on either January 5, 1967 or January 6, 1967, and was rendered the same treatment as before.

23. The Chief Mate did not look at the injury from the time the finger was initially injured until after the ship left Cam Ranh Bay.

24. After the ship left Cam Ranh Bay, plaintiff showed the Chief Mate his finger, which appeared to have "dead meat" around it, and was told that although there was nothing wrong with it, plaintiff could go ashore in Manila for some treatment.

25. The trip from Cam Ranh Bay to Manila took approximately three days.

26. Plaintiff during this time and at all times, was required to continue performing his regular duties despite the injured finger.

27. After the ship reached Manila, plaintiff was taken by launch to a company doctor, where the finger was lanced, and cleaned, medicine was prescribed and a not fit for duty status slip given to plaintiff for a period of three days.

28. Despite the not fit for duty slip, plaintiff was required to soogee dirty walls within the next day or so.

29. The day after this soogeeing assignment, the Chief Mate allowed plaintiff to refrain from working in accordance with his not fit for duty status.

30. Plaintiff was thereafter ordered to descend a vertical ladder hand over hand to clean out the number 4 hatch, which required him to remove broken-up pieces of lumber, dirt, paper and human excretion, thereby exposing him to further harm.

31. Not until the completion of this task, did the Chief Mate look at plaintiff's hand and tell him that he would not be required to do any more work.

32. After the Chief Mate's promise, plaintiff's condition steadily deteriorated as the infection spread from the finger, to the hand, to the arm, and throughout his body, giving rise to a fever.

33. Plaintiff complained to the Captain about the inadequate treatment he had been receiving and was given several morphine tablets.

34. Despite plaintiff's obviously deteriorating condition, he was not removed to the ship's hospital and was kept in his cabin next to the engine room where the temperatures reached 125 degrees.

35. Following the release from his duties until the ship reached Midway, plaintiff's hand was soaked several times daily, he was given aspirin, a white ointment was applied to the hand for a few days, and the bandage was removed.

36. Because plaintiff's condition continued to deteriorate and his arm became swollen and blue, he was taken off the ship by the Coast Guard when they reached Midway on January 20, 1967.

37. Plaintiff was an inpatient at the Midway United States Naval facility from January 20, 1967 to February 1, 1967, during which time he underwent incision, debridement and drainage of the tendon sheath through two transverse incisions over the base of the proximal phalanx and at the distal palmar crease.

38. Plaintiff was flown to the Tripler Hospital in Honolulu and was an inpatient at that facility from February 8, 1967 to March 7, 1967.

39. At the Tripler Hospital, two operations were performed including a debridement, irrigation and drainage, tendon sheath, left ring finger and abscess, left palm, on February 9, 1967, and a redebridement, amputation of left ring finger at level of P/P joint with removal of proximal phalanx, left ring finger, construction of fillet flap graft from

ring finger with suture of flap into palm of left hand.

40. Plaintiff received outpatient treatment at the San Francisco United States Public Health Service through May 9, 1967.

41. Plaintiff was not declared fit for duty until May 9, 1967.

42. Following his injury, plaintiff was unable to secure work until September 29, 1967 because of poor shipping conditions.

43. Plaintiff's average monthly earnings including his basic minimum monthly wage, his compulsory overtime, and his average additional overtime, were in excess of $912.15, exclusive of war bonus.

44. Additionally, plaintiff's pension and welfare benefits were $208.20, holiday benefits were $15.52 per month, and vacation benefits were $78.65 per month, for a total economic gain of $302.37 per month, plus $912.15 which equals $1,214.52 per month.

45. During plaintiff's eight and one-fourth (8¼) months of total disability, he sustained economic and pecuniary losses in the amount of $10,019.79, exclusive of war bonus.

46. The condition of plaintiff's hand is such that it is stiff and is afflicted with cramps whenever he puts a strain on it or is required to work with small objects.

47. There is a fairly large branchlike scar on plaintiff's hand, a partially excised knuckle and an overall appearance of a clawlike hand.

48. Plaintiff's hand is often numb and becomes painful upon exposure to cold weather.

49. Plaintiff's work as a seaman often requires him to work with small objects and to grip objects with a large amount of force.

50. Plaintiff's work as a seaman often exposes him to cold weather.

51. As a result of the loss of his finger, plaintiff has experienced difficulty in performing the normal duties of a seaman, such as tying lines, handling lines, splicing wires, and climbing ladders, etc.

52. Plaintiff's impairment and disability, as described above, are a direct result and proximate cause of his accident and injury of January 3, 1967, and the failure of the ship's officers to render prompt and adequate medical care thereafter.

53. As a result of plaintiff's permanent impairment and disability, plaintiff suffers a permanent impairment to his future earning capacity.

54. Plaintiff's life expectancy, according to the Life Expectancy Tables of the United States Department of Health, Education and Welfare is 20.35 years.

55. Plaintiff has a work-life expectancy of 15.2 years.

56. Taking into account plaintiff's past educational and employment experiences, his past employment record as a merchant seaman for thirty-five years, his life expectancy of 20.35 years, and his work-life expectancy of 15.2 years, the permanent nature of plaintiff's injury of left hand and finger, and the degree of impairment disability and limitation that such injury places upon his potential future employment opportunities as a merchant seaman, computed at 12% of plaintiff's approximate annual remunerations, plaintiff's damages for future impairment of his earning capacity as a result of the injury sustained aboard the SS Denison Victory, after reducing the amount to its present value at 6%, are in the amount of $13,744.86.

57. Plaintiff is awarded the sum of $9,000 to compensate him for the dismemberment and the pain, suffering, discomfort, inconvenience and embarrassment that he has endured and will, in the future, endure as a result of his accident and injury of January 3, 1967, the method utilized for raking in the gangway and the subsequent failure of defendant to render prompt and adequate medical treatment.

■ 58. Plaintiff is awarded damages in the total amount of $32,764.66 to compensate him for his dismemberment and for his past loss of earnings, his future impairment of earning capacity, and all the pain, suffering, discomfort, and permanent impairment, disability, and injury which he has endured in the past and will endure in the future as a result of his accident and injury of January 3, 1967, the method utilized for raking in the gangway and the subsequent failure of defendant to render prompt and adequate medical treatment.

### III.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject-matter.

■ 2. The method used by the SS Denison Victory to rake in the port gangway in conjunction with the negligent failure to provide adequate and proper supervision, manpower, and equipment rendered the ship unseaworthy.

■ 3. The SS Denison Victory was rendered unseaworthy by the negligent action of one of the crew members, which caused the gangway to suddenly surge against the side of the ship.

■ 4. The SS Denison Victory was rendered unseaworthy by the failure of the shipowner to render prompt and adequate medical treatment to plaintiff's injured hand and finger.

■ 5. Defendant was negligent, through its agents, officers, servants, and employees by failing to furnish sufficient supervising manpower and equipment for raking in the gangway, by causing the gangway to suddenly surge against the side of the ship, and by failing to render prompt and adequate medical treatment for plaintiff's injured hand and finger.

6. Plaintiff was not guilty of contributory negligence.

■ 7. *Defendant breached its non-delegable duty and obligation and failed* to provide plaintiff with a reasonably safe place to work.

■ 8. The injuries to plaintiff's left hand and his loss of the ring finger, with all of the attendant pain, suffering, discomfort, impairment and disability with which plaintiff has suffered and has been afflicted since January 3, 1967, up to and including the present time, and with which he will continue to suffer and be afflicted in the future, were directly and proximately caused as a result of the unseaworthiness of the SS Denison Victory, the negligence of the defendant, and the failure to provide plaintiff with a reasonably safe place in which to perform his duties.

9. A verdict is entered in favor of plaintiff and against the defendant in the amount of $32,764.66, plus interest and costs, including the costs of notes of testimony.

It is so ordered.